May it please the Court, Jahan Sagathee for Plaintiffs. I'd like to reserve five minutes for rebuttal. Plaintiffs respectfully submit that the District Court erred in two critical ways, each of which independently requires reversal. First, the District Court incorrectly ruled that the safety regulation at issue has no safety requirement. In essence, its decision turned the regulation's required safety mechanism into a mere computer programming stunt. Second, the District Court improperly dismissed, with prejudice, plaintiffs' non-regulation-based claims, which are based simply on Nissan's misrepresentation of the dangerous nature of its vehicles. Those claims are independently valid, regardless of the Court's decision on the regulation. This time, the other one would be the safety regulation at issue, and that's why I'm going to pause for a moment and say that the District Court, at all times, always ties your – is always tying your State claims back into that safety regulation. That's what the Court was told at all times. That's what it looks like here until you get to us, and particularly very pointedly in the reply brief, say, oh, no, even if there were no regulations in the world, we're pleading – we were pleading this is an unsafe car. It's hard to see that, especially at the District Court level. Yes, Judge Fernandez, I have three responses to that. First, the complaint has several places where it discusses the issue as a safety problem. So paragraphs 13, 14, 26, 27, 28, 38, all four causes of action and the prayer for relief. The complaint is replete with references to safety. Secondly, in the motion to dismiss, I agree we focused on the key code issue because that's the issue that Nissan presented, but we did argue safety generally. And at one point in page 21, we said the vehicles are per se defective as consumers can remove the key fob from the vehicles when they're not in park, turn off the vehicles, and exit them. That's the essence of the safety problem. And it goes on for a few sentences discussing that as a safety problem on page 21. All those causes of action are always incorporating the – you blew it on the key. You blew it on the key. They're incorporating everything. So they're incorporating both. You blew it on the regulation, and they're incorporating safety. So there's no – there's no statement. Well, but the safety is always said in conjunction with you blew it on the regulation. It is mixed. That's – that's difficulty. And when a motion is made, your response is always talking about the regulation. Even when you happen to mention the other ones, you'll say things like, well, why were they fraudulent? Well, they said they met the regs and environmental requirements, and they didn't. Why would – was it a breach of warranty? Same reason. Yes, Your Honor. Why was it fraud? Same reason. I'll concede – I'll concede that it was tied up with the regulation. Well, but that's what the district court is looking at. And when do you say to the district court, wait a minute, district court, throw away the regulation and let us amend? In fact, I don't think you even told us yet what you're going to amend to say. The amendment would – could say – I don't think the court needs to get there because I think the first argument is the strongest argument. I know that. It's golden. But the point is – but the point is the second one has its own problem. Certainly. So we could – we – the standard is obviously extreme liberality in amendment to – in allowing amendment to replete. Well, that sounds a lot like the pro se standard, extreme liberality. That's a quote from this Court. The real standard from this Court on pro ses is freely given when justice so requires. Well, though the court should freely give it when justice so requires. And denial of leave to amend is improper unless it is clear that the complaint could not be saved by any amendment, meaning it's not curable by any new facts that one could allege. Do you ever suggest to the district court what those facts would be? No, Your Honor. No, Your Honor. We never got a chance. This is the first time we've been in court in this case. Oh, come on. You got to file an opposition to the motion, didn't you? Yes. And you could have laid out – you could have said, by the way, Judge, if you're thinking about dismissing this case, we'd like leave to amend and here's what we would amend – here's how we would amend the complaint. Yes. And so we could have done that. And you could have even said something, gee, Judge, I think you blew it. Would you reconsider? You're not granting us leave to amend. You could have done lots of things. Yes. Those – those – And you didn't. We did not. You're right. Correct. So what we're really talking about is do we have to – do we have to overturn it? Because you've, interestingly enough, like a plain error almost. You just kind of left the district court out there hanging. That's too bad. Right? Because it was supposed to dream up on its own that what you really meant was that you could do something else. Well, there – in – in 2000, in Lopez v. Smith on Bonk, this – this Court held that a district court should grant leave to amend even if no request was made unless it determines that the pleading could not possibly have been cured. So to answer your question – But she made that determination based on the allegations in the complaint because you didn't tell her what you might do. Yes. I – I agree, Judge Pais, that it was – that it was sloppy. But to answer Judge Fernandez's initial question, what could we allege, we could allege the exact same facts, the exact same issue, that there's a safety requirement – excuse me – that there's a safety mechanism that all other cars have, that Nissan is the one outlier, the one holdout that doesn't have this – this safety mechanism, and that that is unsafe. Nissan's representing its cars as safe. They're unsafe. So that's a warranty violation. It's a UCL violation under California law. There are all sorts of ways that you can allege that violation as an unsafe car that's being sold as safe, and that is unfair, it's fraudulent, it's deceptive. And there – we could plead the exact same four class claims that we pled. We could plead other claims. But it would essentially rest on the same facts. Does that answer your question, Judge Fernandez? It does answer my question. So I'll return, if you will, to the first issue. As I was saying, the standard of review, of course, is de novo, and plaintiff's allegations and all reasonable inferences from those allegations must be accepted as true. Here, plaintiffs allege that the vehicles are unsafe. The vehicles don't have the rollaway protection mechanism that NHTSA has required in all passenger cars since 1990. So people like Mrs. Taylor, in this case, have been injured and continue to be injured by these unsafe vehicles. Now, Nissan's response is not that the vehicles are safe. Nissan argues that safety is simply not the issue because all it has to do to escape liability is fit through a perceived loophole in the regulation's language. Under its misreading, the regulation simply doesn't require the rollaway protection mechanism that is in the regulation's title. So Nissan asks the Court to read the regulation as a safety regulation that simply doesn't require safety. That is an absurd reading. By comparison, as I indicated, Nissan's competitors comply with the regulation. Chrysler, Mercedes, BMW, Toyota, and Honda, each has manufactured vehicles with electronic keys that have rollaway protections. And Nissan is the only holdout. Now, as I suggested in my earlier response, I'd like to dispel a myth that Nissan  They have rollaway protection because they don't, of course, if somebody leaves his key in the ignition. The essence of rollaway protection is that They don't if somebody leaves his key in the ignition, correct? Who? These other cars. They all have the rollaway protection? Suppose I leave my key in the ignition. I leave my car on. I leave the key in the ignition. I open my door and I get out. And the car is off? I don't put it in park. The car is off? It might be. Okay. So rollaway only deals with when the car is off. So if you, yes, if you leave your key in the ignition, and it's in drive, and you leave the vehicle, that is, yes, that is a rollaway danger. The rollaway protection mechanism doesn't address when the key is left in the car. Because it rests on the driver remembering, oh, I need to take my key. It rests on taking the key out. Yes. And a lot of us do darn fool things like leaving the key in the car and getting out to do something, et cetera, et cetera. And they don't have rollaway protection in that case. It becomes semantics, Your Honor, but that is not a rollaway issue. That is a broad – if you define rollaway more broadly than NHTSA is defining it, then, yes, that's a rollaway problem. But that is not what NHTSA is concerned with. And NHTSA says that's all that happens with us. You leave the key and you're leaving the key in the car. Right? No. Well, you're taking your key with you. And you're leaving that in the car. Right. If you didn't do that, it would not roll away. True? It could roll away, yes. Could not, not if you didn't leave the key in the car. I'm sorry. I don't understand the hypothetical. That's not even a hypothetical. That's what they say. They say you're leaving the key in the car. And how do we know you're leaving the key in – how do we know you're leaving the key? Because the key is the electronic code and that's still in the car. And you're saying – you're describing a Nissan situation. Yeah. So, yes, you leave the code in the car. The car is off. It's in drive. That is the dangerous condition that NHTSA is trying to avoid, that it can roll away. That's your point. So Nissan is saying, yes, it can roll away, but that's not the issue. Right. Because you just left your key in. Right. You left the code in the car. Yes. And if the key is the code, then you left the key in the car. Yes. I wanted to say, if you're – well, the issue of whether the key is the code is a total red herring. And I apologize because I think our briefing, especially in the opening brief and certainly below, was less than clear on this. We were – we probably contributed to the confusion by dancing to Nissan's tune. The question for the Court is not how to construe a particular word in a vacuum, but whether plaintiffs can state a claim under either theory. First, that Nissan violated the regulation. So what does the regulation mean? What does the regulation require? And second, that Nissan misrepresented the safety of its vehicles. So the key being the code, that's not the issue. And inevitably, NHTSA has said that the key can be the code, and in certain circumstances it can. But contrary to Nissan's suggestions, NHTSA has not approved of its reading of the statute. NHTSA has simply stated that the key can be the code. But as I said, that's not the issue. NHTSA's letters, the two letters submitted by Nissan, simply say that the key can be the code, but they don't say that a vehicle with no roll-away protection satisfies the roll-away prevention mechanism. So if this Court accepts Nissan's reading, it will be the first case in which that has happened. And even Judge Armstrong's two-and-a-half pages of analysis don't address that question. It simply focuses on the very narrow question of can the key be the code. And that does not resolve the issue.  And that's the way you argued it. Excuse me? I said that's the way you argued it to the district court. It is, and I'm apologizing for that. But that doesn't dispose of the case. The Court's task is to determine whether under Rule 12 there's a claim. And you don't think counsel ought to be a little, you know, sort of tell the judge what the theory of the case is? Well, we did. We didn't do it very well. But we did. We said that it's not safe and that there is no roll-away protection. And Nissan concedes that. So does the regulation require a roll-away protection mechanism? Do you see your time? Yes. Is that my total time? Yes. Okay. That's what you got. I'll reserve, then. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. My name is John Weisner. I'm counsel for Nissan. What is before the Court this morning is a lawsuit wholly premised on a reading of a motor vehicle safety standard totally opposite of what the plain language of the regulation actually says, and totally opposite of what the agency clearly intended when it adopted this regulation. As counsel noted, the entire case is based on one fundamental allegation, and that's that Nissan's intelligent key system doesn't comply with FMVSS 114. But the trial court, we respectfully submit, properly found that this allegation couldn't survive a motion to dismiss because the thrust of the case is wholly contrary to the plain language of the NHTSA regulation and NHTSA's interpretation and explanation of the regulation when they adopted it. So what is plaintiff's argument? Well, it seems to be that this Court should simply change the regulation to read as plaintiffs would prefer it to read, to make it a standard different from what the agency actually adopted. I think it's important for the Court to grasp that the main argument that's being made here is that FMVSS 114 must be construed to prohibit keys like the intelligent key system. They claim that manufacturers ought to be required to use physical keys or fobs that are physically inserted in the vehicle and that cannot be removed unless and until the transmission is in park. Well, that's not right. That's not what the regulation says. Why is that what they presume? Why is that what they say? I don't understand. What they're saying is that what if, what if, what if the thing were programmed so when you put that whatever you, the intelligent key into its little hole, that allows you to start the car. Once you take it out of the hole, it's like taking a key out of an ignition. It's, it stops it. You can take it out. You don't have to have a key, but it will, it will do what the rest of us, the other folks do mechanically. And, Your Honor, I'm saying that's what they're saying is required, that the, that the agency regulation requires, that you have to have a physical object that you put into the vehicle that cannot be taken out unless the vehicle is in park. Uh-huh. That's what they're saying. Yes. And the ---- Or if you take it out, the vehicle flips itself into park and everything shuts down. True? Right. It wouldn't, you wouldn't have to put the vehicle in park first if you had a different mechanism to do the same thing. Well, but again, I don't think there's any debate here that what the agency is saying is you can't get it physically out of the vehicle unless it goes into park. Or as you're saying, Your Honor, that the removal would cause it to, to go into park. Yes. Yes. I thought some, some car, somebody mentioned you, when you, if you, if you remove it, it just goes into park no matter what. Right. And that, and the regulation contemplates that possibility as well. But that's not covered here. But that's, yeah. That's, that's, that's not related. That's a safety feature. Right. Why, why does the, why does the, just, just curious, purposively, if one cares about purpose, like Henry Hart and Wexler used to, if one cares about purpose, why in the world does the agency care about whether the thing goes, goes into park if you take the key out? What's its point? Well, it's the, the, the heading of that is a rollaway concern. Counsel is. So the agency's point is so that you, it's supposed to sort of. Right. Alert us fools that. Right. That. But. We are. Right. We better put the car in park, right? But what counsel omitted, and there's no concession on Nissan's part that the vehicle wasn't safe, is that the regulation also requires that if you try to, if you open the door, if you try to exit the vehicle, and the vehicle is not in park, that is, the car, the, the key is still in the vehicle, an alarm goes off. And on the Nissan vehicles, there's no dispute. There was also a warning on the dashboard that said put it in park. So. Is there an alarm, too? Yeah. There's an alarm, too. The 114 requires that as well. And so the, the suggestion here that there's an unsafe, an unsafe quality here is, is unfounded. So let me, just practically speaking. So what's the advantage of the intelligent key? The advantage of the intelligent key, you have to remember, this is a regulation that started out being a theft prevention regulation. That's the crux of it. This, this part about the roll-away concern was added to, to the regulation as an additional feature at a later time. But the smart keys are far superior in terms of theft prevention, because there is the need for the electronic code to start the vehicle. And indeed, if you look at NHTSA's rule promulgation, and, and this is the problem with plaintiff's theory. They're looking at moving away from physical keys of any sort, a fob or anything, to insert in the vehicle altogether. For example, the regulation specifically says, we've drafted this so we can have a fingerprint system. You just put your fingerprint on the vehicle. That transfers the code, and it starts. There's no fob. There's no anything. And the agency was specifically saying, we want to draft this regulation to permit that. And the regulation is also clear that, as Plaintiff's acknowledged was, was the case here, the fob doesn't have to be inserted anyplace. You can have it in your pocket. And you just hit the push button. Yeah. Start button. You just push the button to start the car. Now, if you push the button and the fob isn't in the area, the transponder to transfer the code to the vehicle, then nothing happens. The vehicle won't start. The electronic code is in the car. This is the contention of Nissan, that the electronic code is in the car. I think the trial court accepted that contention. And there's no electronic code, then, in the smart key or the fob? No. The fob is the transponder that transmits the code to the vehicle. And there's no electronic code whatsoever within that. Is that right? That's right. It's only there. It's only there permitting the vehicle to start if it's been transmitted there by the fob. And so that's the fundamental function of that. I did, before my time expires, wanted to make sure that I addressed the questions that several of you had on the remand issue in this case, if I may. And this is to say that the district court had it right, the linchpin of this case was that the vehicles were noncompliant with FMVSS 114. I think for all of the reasons that several of you mentioned, the complaint is totally tied to the FMVSS alleged violation. That is the predicate for the action. And if you go through the motion to dismiss, it is clear that it's tied there as well. I mean, I think the key part of the complaint is paragraph 14, which says, quote, And likewise, the motion to dismiss, as was noted, Judge Armstrong, what she was told the complaint was all about, the motion opposition is all tied to the alleged FMVSS violation. The express warranty claim they described as Ms. Tarragon's vehicle met Federal regulations when it was not. Let me just ask you this. I was trying to think through this when I was sort of getting my final preparation for today. Is there a way in which they could have alleged their claims without tying them to the regulation? I don't think so, Your Honor. Under California law? I think at the end of the day it would have to be tied to the Federal motor vehicle safety standard, because you're saying that that's sort of the genesis of the need. I mean, I suppose you could just say that all vehicles should have this, but it's basically what the Federal government is requiring in that regard. I think the key thing on this, Your Honor, is this question needs to be divided into two parts. You have the question whether the court was correct in saying that looking at the complaint before it, this was all based on 114. And I think for all the reasons that were the predicate for the panel's question, that is correct. And then you have this other question which says, should they be permitted to amend now that this complaint has been dismissed? And I think that's where the waiver issue is most apparent. There was no request to the district court for any sort of amendment. The opening brief in this case doesn't say anything about that either. It's focused totally on the question whether there were any claims there other than those based on FMVSS 114. And under Smith v. Marsh, 194F3rd, Ninth Circuit decision from 1999, quote, an appellate court will not consider issues not properly raised before the district court. Furthermore, on appeal, arguments not raised by a party in its opening brief are declared waived. This notion of an amended complaint was mentioned for the first time in the reply brief. I'd also note to the Court one other opinion, Sound Appraisal v. Wells Fargo Bank, 451 Federal Appendix 648, the Ninth Circuit decision from 2011, which I think is pretty much on all fours here, to quote the Court, but at no time before the district court or in their briefing before this Court did they request leave to amend to assert an alternative theory. What had happened in that case is exactly here. In the reply brief, counsel mentioned for the first time, maybe we should be allowed to amend. Well, the opening brief says something like that, doesn't it? No, Your Honor. The opening brief doesn't mention anything about repleting, as I recall. How about plaintiffs respectfully request the court remand to allow the district court to address whether plaintiffs can state a claim on any basis other than the regulation noncompliance? Well, Your Honor, that's not an amendment. You know, they're saying our -- Excuse me? That's not a -- they're not talking there about an amendment. That's what I was trying to separate. I think they're saying there that their original complaint made out claims that were not premised on FMVSS 114. And the issue stated, did the district court err in dismissing without discussion or analysis the nonhonorable claim? But what we're saying, Your Honor, is that there isn't any claim in that original complaint that isn't premised on that. I'm not talking about the complaint. I'm talking about the opening brief. Right. But I don't think their opening brief talks about filing an amended complaint. In essence, what they're acknowledging now is, well, maybe you're right that our opening brief, our opening complaint briefing to the district court was all tied to 114. I think counsel was suggesting that. Now we should be permitted to file a new complaint that lays out all these other that they claim exists. And what I'm saying is that the request to do that has been waived under the sound appraisal case, which therefore said, in that particular decision, said that the dismissal without prejudice should stand. I want to follow up on your contention that under California law, which I'm not quite familiar with, but can there not be an industry standard apart from a government regulation that becomes a standard where it's not being applied to all vehicles universally, and yet it becomes an industry standard? Yes, Your Honor. I think that that circumstance could exist. And I can think of cases where parties have said, yes, the vehicle meets the Federal Motor Vehicle Safety Standard, but we think this, that, or the other should be done. I don't, I can't stand here and suggest what that theory would be, but I'm also not going to say it would be impossible. But I think the point here is that they didn't do that in the original complaint, and they haven't asked to do that, state whatever additional theories they may have by means of amended complaint until the reply brief. And under Ninth Circuit precedent, that's too late. They have waived the opportunity, waived the opportunity to do that.  Thank you, counsel. If there are no further questions, seeing that my time has almost expired, thank you, Your Honors. I'd like to respond to a few things that counsel said. Counsel suggested that we want to change the regulation or institute a requirement for physical keys. I hope that the Court understands that that's not at all what we're asking for. We've praised Nissan's competitors, Honda, Toyota, Mercedes, these other vehicles that have come up with a way to keep the key in your pocket. It's an electronic key. It complies because when the vehicle is off, it's in park. That is the roll-away protection that's existed in FMVSS 114 since 1990. The audible warning is a separate issue, as counsel said, regarding theft prevention. It does serve a roll-away protection purpose, but it also is broader because the audible warning goes off regardless of what gear you're in. So you can try that in your car. You leave your keys in your car. It's in park. It's safe. It's not going to roll away. You leave, and the audible warning goes off. That's just a backup warning. But that doesn't undo the importance of making sure that the car is in park when it's off. The NHTSA position, I think, is actually clear. We don't want to rewrite the regulation. We're perfectly content with everything NHTSA has said that's in the record here, these letters. NHTSA simply has said that the key can be the code. And again, I apologize for shadowboxing on that issue. But the ultimate issue is, does it require a safety mechanism? And NHTSA has always been consistent that it does. So when it expanded the definition in 2006 to include electronic keys, electronic codes, it was very clear that the purpose remained. It wasn't trying to soften the protections. It wasn't trying to create loopholes. And so the protection has always been required. Now, your complaint did not, though, make reference to the electronic code aspect or alternative, did it? No, Your Honor, because we didn't foresee Nissan's very interesting argument. We didn't. You know, we knew that it's a rollaway protection, and this car doesn't have that. All right.  So the defense has made a point that rejects the argument that the claims here for safety violation are not directly tied to SS-114. Well, as the Court has said – well, let's see. Mr. Beisner said that our contention is that all vehicles should have this requirement and, therefore, it's under FMVSS-114. Our contention is actually that all vehicles do have this protection. And as Your Honor, Judge Settle said, it's an industry standard issue. So I'm sorry. I'm just explaining while I'm looking for these sections. So reading from the complaint, and I think one argument is that, you know, there's a reasonable inference that it's in the complaint. But the other argument is that leaves should be freely granted, and this factual contention of Nissan's that's from the contract report that's not a subject of judicial notice was something that cannot be accepted on a Rule 12 standard. And so once we have that contention, we can clarify the complaint to oppose that. But I think it's also contrary to reasonable inferences. But paragraph 13 – Finish up your point because you're over your time. Sorry. To respond to Judge Settle, paragraph 13 and 14, for example, the need to shift into park or have the vehicle shift into park or to turn off the vehicle and remove the key is, therefore, a key safety feature upon which drivers rely whose absence is not readily apparent. So the essence of the complaint is safety, and we hope that the Court will read the FMVSS114 to actually require safety. Thank you, Your Honor. Thank you, counsel. We appreciate your arguments this morning. The matter is submitted at this time, and that ends our session for today.
judges: Settle, Fernandez, Paez